**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

JAYNE HALL,

           Plaintiff

v.
                              **MEMORANDUM OPINION**
                                **AND ORDER**
                      Civil File No. 04-2804 (MJD/JGL)

MESABA AIRLINES, INC.,

           Defendant.

_____

Daniel E. Warner, Warner Law Office, P.A., counsel for Plaintiff Jayne Hall.

Gregory J. Stenmoe, Steven W. Wilson, Briggs and Morgan, P.A., counsel for
Defendant Mesaba Airlines, Inc.

_____

## I.     INTRODUCTION

      This case is before the Court on Defendant Mesaba Airlines' motion for

summary judgment.

## II.    FACTUAL BACKGROUND

      Plaintiff Jayne Hall began work with Mesaba Airlines on July 1, 1997 as a

Customer Service Agent.  She later was promoted to Customer Service

Coordinator, with supervisory responsibility over gate agents.  In 1999, Hall

applied for and received training as a load planner, in which she worked in

operations planning flights, and then later was selected for training as a backup

operations coordinator.  In October, 1999, Hall took a position as an operations

coordinator.  Between July 1997 and 2000, Hall received only one written

evaluation on her work performance, which reported that she met or exceeded

expectations for the position.  No areas for correction were reported.  Twice, she

received written commendations for admirable or excellent customer service.

In May, 2000, Ms. Hall voluntarily resigned from Mesaba to return to her

home in Iowa for personal reasons.  Within less than 1 year, she had returned to

Minnesota, and by January, 2001 was re-hired by Mesaba as an Operations/SOC

Supervisor, a new position in which she supervised other operations coordinators.

Cory Peterson, the Mesaba employee who hired her on her return, testified that

he believed she had the qualifications for the position based on his observations of

her past work performance and favorable comments from her previous employer,

Sun Country.

After 9/11, Mesaba eliminated positions and re-assigned some employees to

different, lower paying jobs.  Hall, for example, was re-assigned to a customer

service agent position at a lower pay rate.  By June, 2002 Hall was back in the

position of Operations Coordinator.

In 2003, Mesaba reorganized the Operations department by combining the

responsibilities of some positions while reducing the total number of personnel hours available to the department.  A new Operations Coordinator position was posted in April, 2003 and current operations coordinator employees were advised to reapply for their positions.  Twenty-one (21) Mesaba employees applied for the reconfigured position.

Three of the 21 applicants were not interviewed because they were "pre-selected" for positions in the reorganized department, based on Mesaba's conclusion that they were "outstanding," "well-rounded" employees.  The remaining 18 employee-applicants were interviewed and asked the same series of questions, derived from a Mesaba employment interview manual.  Because previous Operations Coordinator experience was not nearly as important in the selection process as leadership, self-motivation, and communication skills,   the questions were intended to elicit information on these traits.  The three interviewers took notes on each candidate and afterwards, separately ranked each candidate, and then combined their rankings to obtain an average score, based solely on the interview.  After the 3 pre-selected employees (who were ranked 1, 2, 3), the next eleven (11) employees in the interviewers' rankings were offered positions as operations coordinators.  Ms. Hall was not offered a position and in the informal ranking created by the interviewers after the interviews, Hall was tied with another female employee for last place.  In all, four men and three

women were <u>not</u> offered Operations Coordinator positions.

At the time of her interview, Ms. Hall was 8 months pregnant.  Once informed that she was not selected for the position, Hall, along with the other employees who were not selected, was offered a Gate or Ramp position.  Hall testified that the supervisor of the operations area, Kunkel, told her she did not get the Operations Coordinator position because she was "not motivated."  Hall thus  declined the alternative position because she did not want to take a pay cut ($2/hour) and she was upset about being characterized as unmotivated.  Hall retained her Operations Coordinator position for another week or 2, and then took a temporary administrative job, verifying time cards for the last few weeks before her maternity leave.  During this time, Hall asserts that either Kunkel or an HR person at Mesaba offered her a severance package, which included a release of all claims.

Hall admits that none of the three interviewers said or did anything to Hall during her employment at Mesaba that suggested a bias against her because she was pregnant.  Two of the interviewers (the third was not deposed) testified that Hall was not offered a position because she was a poor communicator who could not handle the stress of the position, citing as examples instances in which Hall failed to notify ground crews in a timely manner about a plane's arrival; an inability to decide where to park a plane that needed a gate assignment; and an

inability to assist in re-routing planes around bad weather.  Two of Hall's co-
employees identified similar examples.   None of these instances were
documented in writing, however, even though forms were available to do so.

However, Hall's supervisor in the Operations department testified that Hall
"did a fairly good job," was "always willing to take on . . . extra duties," "made
good judgment calls."  While the interviewers cited Hall's communications
problems as an area of concern, this supervisor described Hall's communication
style as "pretty cut and dry," and though some found her communications a bit
longer than necessary, the supervisor did not consider this an unusual problem or
an area of concern.  Hall's supervisor testified that Hall had "very good job
knowledge" that would transfer to the operations coordinator position, while
some employees that were hired for the job did not have that knowledge,
although "It was all things that could be learned."

Hall alleges that she had been with the company longer and/or had more
experience than 10 of the 11 employees hired for the re-configured operations
coordinator position.  Some of the employees selected had never held the position
of Operations coordinator, or Hall had supervised the employee in the limited
time the employee spent in the position.

Hall resigned from Mesaba effective May 31, 2003, after spending about 2
weeks in an administrative position.  Neither her pay nor her benefits were

reduced before she resigned.  Hall did not file any complaint with Mesaba about

pregnancy discrimination.  Hall filed a complaint with the EEOC on December 19,

2003 and received a Notice of Right to Sue.  In the EEOC, Mesaba explained its

decision not to hire Hall as follows:

> Hall did poorly during her interview.  She failed to give relevant
> examples that pertained to work issues.  Hall used parenting
> examples in lieu of specific work related issues.  Ms. Hall should have
> been able to provide work related examples for each question that
> pertained to her work environment and the qualifications and skills
> needed to be effective in the position.  As compared to the other
> candidates selected, Ms. Hall's leadership and decision making skills
> did not measure up.

Other applicants, including those who received jobs in the new Operations

Coordinator position, used non-work related experiences in response to questions.

In her complaint, Hall asserted claims for pregnancy discrimination under Title 7

and under the Minnesota Human Rights Act.

## III.   DISCUSSION

### A.   <u>Procedural Standards</u>.

Under Fed. R. Civ. P. 56, Mesaba must show that there are no material

disputed facts on which a reasonable fact finder could find in Hall's favor and that

Mesaba is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *Clardy v. City of St. Paul*, No. 01-

CV-1275, 2003 WL 21805203 at *3 (D. Minn., Aug. 4, 2003).  Hall, as the non-

moving party, need not prove a material factual dispute, but must demonstrate

the existence of specific disputed facts, not allegations or denials, that show a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)*; Hase v. Missouri Div. of Employment Security,* 972 F.3d 893, 895 (8th Cir. 1992), *cert. denied*, 508 U.S. 906 (1993). The court must view the summary judgment record in a light most favorable to the non-moving party. *Krenik*, 47 F.3d at 957 (inferences viewed in light most favorable to non-movant). Only where the evidence does not support any reasonable inference of discrimination should summary judgment be granted. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005) (citing *Lynn v. Deaconess Med. Ctr. - West Campus*, 160 F.3d 484, 486-87 (8th Cir. 1998)).

Hall admits that she has no evidence of direct discrimination, i.e., that Mesaba employees did or said anything suggesting a bias because of her pregnancy. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (defining "direct evidence" as a "specific link" between the bias and the challenged decision). Thus, Hall's claims and Mesaba's Motion are analyzed under the three-part *McDonnell-Douglas* test.[1] First, Hall must present disputed factual issues on the elements of the prima facie case, namely: (1) that she is a member of a protected class; (2) she was qualified for the position she sought; (3)

---

[1]     Hall's claim under the Minnesota Human Rights Act uses the same analytical framework. *Saulsberry v. St. Mary's Univ.*, 318 F.3d 862, 866 (8th Cir. 2003).

an adverse employment action was taken against her under circumstances giving rise to an inference of discrimination; and (4) others similarly situated to Hall were treated differently. *Sura v. Stearns Bank N.A.*, No. 01-1344 (PAM/RLE), 2002 WL 31898167 at *5 (D. Minn., Dec. 18, 2002) (pregnancy discrimination – job restructuring and pay cut) (quoting *Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 857 (8th Cir. 1998) (pregnancy discrimination – constructive discharge)); *Lang v. Star Herald*, 107 F.3d 1308, 1311 (8th Cir.) (pregnancy discrimination – denial of leave benefit), *cert. denied,* 522 U.S. 839 (1997).  Since Hall was not actually terminated, she can also "offer evidence sufficient to demonstrate that she was constructively discharged." *Bergstrom-Ek*, 153 F.3d at 858.

Once this prima facie showing is made, the burden shifts to Mesaba to show an absence of disputed facts demonstrating a legitimate, nondiscriminatory reason for its decision.  Hall then has the burden to demonstrate that disputed material facts would allow a reasonable fact finder to conclude that the proffered reason is a pretext for unlawful discrimination. *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006-07 (8th Cir. 2005); *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1017 (8th Cir. 2005).

### B.     Adverse Action.

Hall claims that Mesaba improperly discriminated against her on the basis of her pregnancy, under Title VII and the Minnesota Human Rights Act, Minn.

8

Stat. §363.03, subd. 1(2), either by denying her a promotion, or by constructively

discharging her.  Mesaba argues that Hall's prima facie case fails because she

cannot demonstrate factual disputes on the existence of an adverse action, either

in the form of a termination or a constructive discharge.

### 1.  Denial of Promotion/Termination

Mesaba argues that, as an undisputed fact, there was no adverse

employment action because the action that Mesaba would have taken (demoting

Hall to gate/ramp agent) never actually occurred once Hall resigned.  Hall, on the

other hand, argues that the adverse action is found in the failure to promote, i.e.,

failure to give her the reformulated Operations Coordinator position, which as a

factual matter occurred before her resignation.

An adverse employment action is "that which materially alters the terms or

conditions of the plaintiff's employment."  *Enowmbitang v. Seagate Tech., Inc.*, 148

F.3d 970, 973 (8th Cir. 1998).  The failure to promote an employee to a position

for which the employee is a qualified is an adverse action.  *Id.* at 973 (employee

presented prima facie case where employee applied for but did not receive

promotion); *see also Watson v. O'Neill*, 365 F.3d 609, 613 (8th Cir. 2004) (denial of

applied for promotion is an adverse action).  Mesaba cites several cases for the

proposition that an intended transfer that is never effectuated cannot be an

adverse action.  None of the cases, however, is as clear on this point as Mesaba

9

suggests.  For example, in *Spears v. Missouri Dep't of Corrections & Human Resources*, 210 F.3d 850 (8ᵗʰ Cir. 2000), the transfer was actually effectuated. However, the Court held that it was not an "adverse action" because the transfer had no impact on the plaintiff's "job title, salary, benefits or other material aspects" of her employment.  *Id.* at 853.  The Court did not consider whether the denial of another requested transfer was an "adverse" action because the only issue with that denial was whether it created an intolerable working environment for purposes of Plaintiff's constructive discharge claim.  *Id.* at 855.  *See also Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 829 & n. 10 (11ᵗʰ Cir. 2000) (noting in dicta that a "proposed uneffectuated transfer is not an adverse employment action" but recognizing that proposed but rejected transfer was adverse action where significant pay loss resulted); *Prickett v. Amoco Oil Co.*, 147 F. Supp. 1147, 1158-59 (D. Utah 2001), *aff'd*, 2002 WL 373979 (10ᵗʰ Cir., Mar. 11, 2002) (noting that "employer's unexecuted intentions cannot be considered an 'employment action' at all, much less an adverse one," where evidence indicated that had transfer occurred, employee would have had the same pay, benefits, title, and substantially the same job responsibilities).

It is undisputed that Hall did not receive the Operations Coordinator position.  It is also undisputed that Hall transferred from that position to an administrative position, with different job responsibilities but the same pay, for the

last few weeks remaining before her maternity leave.

On this record, Hall has shown sufficient material factual disputes on the element of an adverse action.  Taking the facts in a light most favorable to Hall, she applied for a job for which Mesaba agrees she was minimally qualified.  When she did not get that position, her only option was to return to a position that she had not held for approximately 2 years, at a lower pay rate.  While she did not take the alternative offered, it is undisputed that she was no longer in the Operations Coordinator position before her employment with Mesaba ended.  A reasonable fact finder could find that the denial of the applied for position and/or the loss of Hall's position, before her maternity leave began, is an adverse action.

### 2.  Constructive Discharge

In the alternative, Mesaba argues that Hall cannot show sufficient material factual disputes that she was constructively discharged by reason of Mesaba's failure to promote.  Mesaba argues that applying the required objective, reasonable employee standard to Hall's working conditions, the undisputed facts show that Hall did not act reasonably in failing to communicate her dissatisfaction to Mesaba, and in quitting without considering alternatives.

The Eighth Circuit requires the constructive discharge plaintiff to demonstrate more than just a Title VII violation.  Plaintiff must show that the workplace conditions were so intolerable that a reasonable person would feel

compelled to resign.  *Coffman v. Tracker Marine, L.P.,* 141 F.3d 1241, 1247 (8th Cir. 1998)  (plaintiff must show more than Title VII violation to prevail on constructive discharge claim); *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995)*; Hukkanen v. International Union of Operating Engineers, Hosting & Portable Local No. 101*, 3 F.3d 281, 284 (8th Cir. 1993).  In applying the reasonable employee standard, the Eighth Circuit has repeatedly held that an employee acts unreasonably in quitting without giving the employer notice of a problem or an opportunity to remedy the problem.  See *West*, 54 F.3d at 498 (quoting *Smith v. Goodyear Tire & Rubber Co.*, 895 F.2d  467, 473 (8th Cir. 1990)); *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 497 (8th Cir. 1996) ("Tidwell's decision to forego any effort at communicating his grievance to Meyer's reinforces the fact that he acted unreasonably when he quit.").   And, working conditions are not necessarily intolerable where the employee loses "a single promotion opportunity to an arguably better qualified candidate," *Tidwell*, 93 F.3d at 495; or, where the employee believes she is unfairly criticized.  *Tork v. St. Luke's Hosp.*, 181 F.3d 918, 919 (8th Cir. 1999).

Hall testified that she was not interested in the gate/ramp assignment because she did not want to take a pay cut and she was upset about being characterized as unmotivated.  Other employees, however, took the pay cut and the demotion rather than lose their jobs entirely.  The Eighth Circuit has held that

"Dissatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge." *Tidwell,* 93 F.3d at 496; *see also Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 797 (8th Cir. 1996) (conditions were not intolerable where similarly situated employees treated alike). No reasonable fact finder could conclude, based on this record, that Hall was constructively discharged. Accordingly, Hall's constructive discharge claim fails on this element.

## C. <u>Treatment of Similarly Situated Employees</u>.

Hall must also establish a factual dispute by demonstrating that she "was treated less favorably than similarly situated employees outside of [her] protected class." *Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 568 (8th Cir. 2000); *Torlowei v. Target*, No. 02-933, 2004 WL 229081 at *5 (D. Minn., Feb. 3, 2004), *aff'd*, 401 F.3d 933 (8th Cir. 2005). Mesaba argues that, based on the job requirements and the characteristics and qualifications of those who did and did not receive Operations Coordinator positions, the undisputed facts preclude Hall from meeting this element.

Mesaba argues that all of the applicants were treated the same in the interview process and all were held to the same standard for the job requirements. And, while none of the applicants accepted for the Operations Coordinator position were pregnant, Mesaba points out that other non-pregnant employees

13

also did not receive the position.  Mesaba also points out that three of those employees (Riley, Conyers, and Sindler) each had greater seniority than Hall, and like Hall, were working as Operations Coordinators at the time of the reformulation.

Hall did not directly address this element in her opposition brief, leaving some uncertainty as to the precise disputed facts on which she relies for this element of the prima facie case.  However, the record demonstrates that some similarly situated employees were treated differently than Hall.  For example, three employees (2 of whom were non-pregnant women) were not interviewed for the jobs, but were "pre-selected."  And, some interviewees, like Hall, gave non-work examples in response to questions posed in the interviews, but unlike Hall, those employees received Operations Coordinator positions.

The Eighth Circuit has held that an employee who is "minimally qualified" for the job at issue meets the prima facie case requirements.  *Pope,* 406 F.3d at 1007 ("Pope met the minimum qualifications for the position").   And, establishing the elements of the prima facie case is not considered "a difficult or onerous burden."  *Krenik*, 47 F.3d at 957 (citing *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093-94 (1981)).  Applying this standard, and taking the facts in a light most favorable to Hall, the record shows Hall has met her burden on this element.

14

**D.  <u>Pretext</u>**

Mesaba argues that there are no disputed facts that would support a finding that its proffered reasons for denying the job to Hall were not legitimate or were a pretext for pregnancy discrimination.   Mesaba argues that it made the business judgment that the reformulated Operations Coordinator position required communication and leadership skills, and that Hall did not possess those skills.

Since Hall has succeeded in establishing material factual disputes on the prima facie case, the burden shifts to Mesaba to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Hase*, 972 F.2d at 896 (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824).  As with the prima facie case, the Eighth Circuit has held that the "burden to articulate a nondiscriminatory justification is not onerous[.]" *Pope*, 406 F.3d at 1007 (quoting *Floyd v. State of Missouri Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)).  Mesaba has met this burden by demonstrating that the reconfiguration of the Operations Department, including elimination of some jobs, required all employees to reapply for their jobs.  Interviews were conducted and some employees that held the Operations Coordinator positions no longer had those jobs.  This process and reason meets the nondiscriminatory justification requirement, and Hall does not contend otherwise.

The burden now shifts back to Hall to present evidence of material factual

15

disputes that would support the conclusion that Mesaba's justifications are a

pretext for discrimination, because a reasonable fact finder could conclude that

those reasons are unlawfully motivated by a protected characteristic, i.e., Hall's

pregnancy.  The Eighth Circuit recently explained this burden in *Strate*, 398 F.3d

1011, in reversing the lower court's entry of summary judgment for the employer:

> [A] plaintiff bringing an employment discrimination claim may
> succeed in resisting a motion for summary judgment where the
> evidence, direct or circumstantial, establishes a genuine issue of fact
> regarding an unlawful motivation for the adverse employment action
> (i.e., a motivation based upon a protected characteristic), even
> though the plaintiff may not be able to create genuine doubt as to
> the truthfulness of a different, yet lawful, motivation.

*Id.* at 1018.

Hall, relying on *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861 (8th Cir.

1997), argues that she was more qualified for the position than all but 1 of those

employees that received the job because she had greater seniority and/or more

experience in that position.  Mesaba contends that Hall's comparison is misplaced

because it wrongly assumes that the only qualifications for the job were seniority

and experience in the position.  The employee charged with restructuring the

Operations Department (Kunkel) testified that those qualities were of the least

significance in the application process, if they were considered at all.  Kunkel also

testified that all applicants were considered on the basis of their leadership and

communication abilities.  (Kunkel Depo. at 81-82).  Kunkel also testified that Hall

could not perform most of the tasks listed on the job posting.  (*Id.* at 94).

The evidence in the record includes the job requirements for the Operations Coordinator position that Hall held before the reorganization in 2003, and the job requirements for the reformulated Operations Coordinator position.  (Hall Depo. Exs. 16 & 31).  Mesaba argues that the reformulated position was in effect a new job with new requirements, which is borne out by a comparison between the job requirements before and after the reformulation.

Hall does not dispute this contention, nor does Hall dispute Mesaba's argument that seniority and experience were not considered in the review process of the applicants.  More importantly, Hall has not identified any facts that would dispute the contention that leadership, communication, and multi-tasking abilities were the job requirements.  Further, with the exception of the non-work related answers, Hall does not contend that she performed the same as or better than any other employees in the interview.  *See Enowmbitang*, 148 F.3d at 973 (undisputed that employees selected for promotion had higher GPA than plaintiff, and plaintiff "presented no evidence . . . to support his bare assertion that GPA was unimportant to Seagate"); *Krenik*, 47 F.3d at 960 ("Krenik presented evidence which showed that she too, was qualified for the position, but no evidence which showed that her qualifications surpassed or even equaled those of McMillen. . . . and [Krenik] failed to demonstrate the same level of practical knowledge in her

17

interview.").

There are factual disputes in the record, for example, on Hall's past job performance and her use of family examples in the interview.  Critically, however, no where in the record are there any factual disputes that would suggest an unlawful motivation based on Hall's pregnancy.  Indeed, Hall admits that no one at Mesaba said or did anything that suggested discrimination on the basis of her pregnancy, and admits that she did not hide her pregnancy from Mesaba.  (Hall Depo. at 77, 95-96).  And, as Mesaba pointed out, this was Hall's second pregnancy during her employment with Mesaba, and she had no objections to her treatment during her first pregnancy.  Hall points to no facts or evidence from which an inference of pregnancy discrimination can be drawn, other than the fact of her pregnancy and the fact that she did not receive the job promotion based on Mesaba's assessment of her "parenting examples," and lack of leadership and decision making skills as demonstrated in the interview.

These two events do not support a reasonable inference of unlawful discrimination.  First, the timing between these two events is too distant – somewhere between 5 and 8 months.  *See Pope*, 406 F.3d at 1010-11 (4 months is too long to create fact issue on whistleblower claim); *Hayes v. U.S. Bancorp Piper Jaffray Inc.*, No. 03-4208, 2004 WL 2075560 (D. Minn., Sept. 16, 2004) (two months between FMLA leave and discharge not enough to show factual dispute

on pretext element of retaliation claim).  Second, even if the time span were not too long, by itself it cannot create a material factual dispute.  "It is well established in this circuit that mere temporal proximity between an employee's protected activity and the employer's adverse employment treatment generally will not suffice to create a genuine issue of fact on a retaliation claim."  *Tatum v. City of Berkeley*, 408 F.3d 543, 555 (8th Cir. 2005) (race discrimination).  Third, Mesaba has offered credible reasons for its decision not to promote Hall, in response to which Hall simply challenges the legitimacy of accepting some and rejecting other employees' interview answers, and creating a ranking based on those answers. Even if Mesaba rejected Hall's "parenting examples in lieu of specific work related issues" in the interview, the record shows it did the same for other, non-pregnant employees who did not receive the Operations Coordinator jobs.  Kunkel Depo. Exs. 42-43 (Mesaba Doc. Nos. 246, 257, & 263).  This court will not "second guess" an employer's reasonable business decision, nor "evaluate the veracity of [the employer's] offered reasons" for a business decision.  *Groves v. Cost Planning & Mgmt. Int'l*, 372 F.3d 1008, 1009-10 (8th Cir. 2004).  *See also Krenik*, 47 F.3d at 960 (court should not "sit as a super-personnel department that reexamines an entity's business decisions. . . . Rather, [the court's] inquiry is limited to whether the employer gave an honest explanation of its behavior.") (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)).

IT IS HEREBY ORDERED that Mesaba Airlines, Inc.'s Motion for Summary

Judgment [Doc. No. 12] is GRANTED and this case is DISMISSED WITH

PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 28, 2005

s/ Michael J. Davis
Michael J. Davis
United States District Court